**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DENISE PORRETTA, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | No. 19-5336 |
|     Defendant. | : | |

**MEMORANDUM OPINION**

TIMOTHY R. RICE                                                                                                          May 12, 2020
U.S. MAGISTRATE JUDGE

      Plaintiff Denise Porretta alleges the Administrative Law Judge ("ALJ") erred in denying her application for Disability Insurance Benefits ("DIB") by: (1) failing to account for all credibly-established mental limitations in his Residual Functional Capacity (RFC) assessment[1]; and (2) substituting his own lay opinion for the medical opinions of her treating neurologist and consulting examiner.  Pl. Br. (doc. 11) at 3.  Because the ALJ's opinion includes substantial evidence to support the mental restrictions in his RFC and his treatment of the medical source statements, I deny Plaintiff's request for review.[2]

      Porretta filed for benefits based on a combination of physical and mental impairments in February 2016.  R. at 58-59.  A workplace injury to her right shoulder in 2010 had led to multiple unsuccessful shoulder surgeries, five years of physical therapy, and Reflex Sympathetic

---

[1]     A claimant's RFC reflects "the most [she] can still do [in a work setting] despite [her] limitations."  20 C.F.R. § 404.1545(a).

[2]     Porretta consented to my jurisdiction on December 17, 2019 (doc. 6), pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 72, Local Rule 72.1, and Standing Order, In re Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018).  See also Roell v. Withrow, 538 U.S. 580, 584 (2003) (consent to Magistrate Judge jurisdiction can be inferred from failure to object after notice and opportunity).

Dystrophy (RSD), also known as Complex Regional Pain Disorder. R. at 737-38, 826, 960. According to Porretta, RSD physically incapacitated her and triggered disabling depression. Id. at 35-51.

The ALJ acknowledged that Porretta could not use her right arm at all, id. at 57, but nevertheless found her capable of a limited range of light work, id. at 20. Despite her history of skilled work, he restricted her to unskilled work with "short, simple instructions" to account for the cognitive, memory, and concentration limitations caused by her depression. Id.

Porretta contends the mental limitations in the RFC are legally inadequate because they fail to account for the impairments the ALJ acknowledged at Step 3 in her reasoning, social interactions, and ability to maintain herself. Pl. Br. at 7-12. She argues that the ALJ's findings that she suffered from "moderate" limitations in her ability to concentrate and interact with others, and his finding that she suffered from "mild" limitations in her activities of daily living, are inconsistent with the RFC's blanket limitation to unskilled work with "short, simple instructions." Id. She also cites the Dictionary of Occupational Titles (DOT) to argue the ALJ legally erred by failing to account for a "discrepancy" between the DOT and the Vocational Expert (VE) testimony. Reply (doc. 13) at 2 (citing SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000)). Porretta contends the VE testimony that she could perform two jobs requiring Reasoning Level Two and one requiring Reasoning Level Four was inconsistent with the DOT because the DOT defines Reasoning Level Two as requiring the ability to carry out "detailed" instructions, while the RFC limited her to work with "short, simple instructions." Pl. Br. at 5.

The VE, however, testified that the information she provided was either consistent with the DOT or based on her "opinion and knowledge." R. at 54. To the extent that the

"discrepancy" Porretta identifies was a question of interpretation, the VE testimony was adequate to meet the Commissioner's burden of proof. Zirnsak v. Colvin, 777 F.3d 607, 616 (3d Cir. 2014) (citing 20 C.F.R. § 404.1566(e) for the proposition that the Commissioner can meet his Step Five burden with VE testimony).

Further, the ALJ was not required to use any specific language in his RFC to incorporate the moderate and mild ratings of her mental limitations. Hess v. Comm'r of Soc. Sec., 931 F.3d 198, 209 (3d Cir. 2019) ("no incantations are required at steps four and five simply because a particular finding has been made at steps two and three"). Translating a moderate concentration impairment into a "simple tasks" limitation is permitted "as long as the ALJ offers a 'valid explanation.'" Id. at 211 (permitting a 'simple tasks' limitation after a finding of 'moderate' difficulties in 'concentration, persistence, or pace'"). Here, the ALJ noted the contrast between Porretta's alleged symptoms and reported daily activities, as well as the multiple normal mental status examinations on record. R. at 20-23. He gave "partial weight" to the opinion of the examining psychologist who found Porretta suffered from severe mental impairments that caused no more than moderate limitations, and provided more restrictive mental limitations than the psychologist recommended. Id. at 23-24. The ALJ adequately explained his treatment of Porretta's concentration limitations in his RFC. Hess, 913 F.3d at 211; see also Zirnsak, 777 F.3d at 618 ("there is no bright-line rule stating whether there is a per se conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work"), Zirnsak v. Colvin, No. 13-303, 2013 WL 6622925, at *6 (W.D. Pa. Dec. 5, 2013) (ALJ found Zirnsak suffered from moderate concentration limitations); Geiser v. Astrue, No. 10-1973, 2011 WL 3163219, at *11-12 (M.D. Pa. July 26, 2011) (finding claimant restricted to

"simple" work could perform a job requiring Reasoning Level Three and listing 13 other cases finding the same).[3]

Porretta also argues the ALJ legally erred by failing to include any restrictions to accommodate her moderate limitations in social interactions. Pl. Br. at 10-11. The ALJ was permitted to exclude specific limitations related to social interactions as long as he adequately explain his RFC. Holloman v. Comm'r of Soc. Sec., 639 F. App'x 810, 815-16 (3d Cir. 2016) (upholding ALJ RFC that did not include social limitations after a finding of moderate social limitation at Step 3). The same analysis that supported the ALJ's RFC for concentration limitations supported his RFC for social interactions because it included information that Porretta went out to dinner with her husband or a friend and interacted appropriately with health care providers. R. at 22-23. The ALJ also explained he found her statements regarding the functional limitations of her impairments were "not entirely consistent with the medical evidence and other evidence of record" based on: (1) her activities and lifestyle; (2) the treatment she received; (3) discrepancies between her assertions and documentary reports; (4) her demeanor at the hearing; (5) her medical history; (6) findings on her medical examinations; and (7) reports of her

---

[3] I need not decide whether Reasoning Level Four positions are appropriate for claimants with "moderate" concentration impairments because the ALJ met his burden of proving Porretta could perform jobs available in "significant numbers in the national economy" by identifying the Reasoning Level 2 positions. 20 C.F.R. § 404.1566(b). ALJs are not required to prove multiple professions are available to claimants as long as they have provided substantial evidence that at least one job is available in "significant numbers" in the national economy. Henderson v. Soc. Sec. Admin., 87 F. App'x 248, 253 (3d Cir. 2004). VE testimony that there were 10,000 positions as a salon attendant and 21,000 jobs as a baby stroller or wheelchair rental clerk available nationally, R. at 54, was sufficient to meet the Commissioner's burden because both positions required only Reasoning Level Two. Young v. Astrue, 519 F. App'x 769, 772 (3d Cir. 2013) ("testimony from the vocational expert that 20,000 jobs were available in the national economy is sufficient to support a finding that work exists in significant numbers").

reviewing, treating, and evaluating providers. Id. at 24. My review of the medical record confirmed the ALJ's observations that Porretta's limitations were primarily physical, with mental limitations effectively stemming from her physical condition. See, e.g., id. at 44 (she has never treated with a mental health specialist), 50 (her concentration limitations are caused by pain), 51 (her social limitations are based on fear of encountering physical limitations). The ALJ supported an RFC that did not include social limitations with substantial evidence. Holloman, 639 F. App'x at 815-16.

Finally, Porretta argues the ALJ's RFC failed to account for her mild limitations in adapting or managing herself. Pl. Br. at 12. The ALJ described Porretta's extensive activities of daily living, finding the mild restrictions that he noted were "inconsistent with her complaints of prolonged and consistent disabling functional limitations." R. at 25. The ALJ provided substantial evidence to support his mental RFC. Holloman, 639 F. App'x at 815-16.

Porretta also contends the ALJ erred by giving only "partial weight" to the opinion of her treating neurologist, Dr. Kesha Wilford. Pl. Br. at 13. Dr. Wilford opined Porretta could sit, stand, or walk for more than six hours in an eight-hour workday, but would need to alternate positions every two hours. R. at 1187. She found Porretta could rarely lift or carry less than 10 pounds, never push or pull with her arms and only occasionally push or pull with her legs. Id. Dr. Wilford further opined Porretta could frequently reach but never handle, finger, or feel, and that she would miss more than three days of work per month. Id. at 1188. Dr. Wilford supported her opinion with medical findings regarding Porretta's right arm. Id.

The ALJ explained he gave only "partial weight" to Dr. Wilford's opinion "to the extent of some of its manipulative, postural, and environmental limitations" because: (1) the restrictions

were overly restrictive; (2) they were an overstatement of the evidence; (3) they were inconsistent with the evidence of record as a whole; and (4) the opinion was a mere "checklist." Id. at 23.  The ALJ accurately found the opinion a mere checklist, and that it overstated the evidence on which it was based.  Although the only findings on which Dr. Wilford based her opinions concerned Porretta's right arm, she provided exertional, manipulative, postural, and environmental limitations without distinguishing between Porretta's right and left arms.  Id. at 1187-88.  Moreover, some of the limitations in the ALJ's RFC are more restrictive than Dr. Wilford's recommendations.  Compare, e.g., id. at 1087 (Dr. Wilford limited Porretta to standing or walking for more than six hours in an eight-hour day), with id. at 20 (the ALJ limited Porretta to standing or walking for only four hours in an eight-hour day).  The ALJ's treatment of Dr. Wilford's opinion can justify remand only if remand could lead to a different outcome.  Shinseki v. Sanders, 556 U.S. 396, 406 (2009) (the harmless-error rule applies to judicial review of administrative proceedings); Woodson v. Comm'r Soc. Sec., 661 F. App'x 762, 766 (3d Cir. 2016) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005)) (remand is only appropriate when there could be a different outcome).  The crux of the dispute regarding Dr. Wilford's opinion, therefore, is limited to Dr. Wilford's opinion that Porretta could never lift or carry more than 10 pounds, (as opposed to the 20 pounds of the ALJ's "light" RFC, see 20 C.F.R. § 404.1567), and that Porretta would be absent from work three or more days per month, R. at 1188.  See also R. at 56 (there would be no jobs available for an individual with Porretta's limitations who also missed two or more days of work per month).

      The only physical findings Dr. Wilford made at the examination on which her opinion was based were increased tone and reduced range of motion in Porretta's right arm.  R. at 1087.

Because the RFC allows only positions that require no use of Porretta's right arm, id. at 57 (the RFC assumes Porretta "could do nothing with the right" arm), the ALJ provided substantial evidence to support his conclusion that the other limitations in Dr. Wilford's opinion were overly restrictive and an overstatement of the evidence, id. at 23. The ALJ accurately summarized the rest of the medical record, which showed benign findings except for those affecting the right arm, conservative treatment that was largely effective, and activities and lifestyle inconsistent with full disability. Id. at 24. The ALJ cited substantial evidence to support his conclusion that Dr. Wilford's restrictions beyond limiting the use of Porretta's right arm were inconsistent with the record as a whole. Dula v. Barnhart, 129 F. App'x 715, 718 (3d Cir. 2005) ("The ALJ retains the duty to analyze treating source opinions and judge whether they are supported by and consistent with the rest of the record.").

Porretta also challenges the ALJ's treatment of the opinion of consulting examiner Dr. David Klebanoff. Pl. Br. at 14. The ALJ gave "partial weight" to Dr. Klebanoff's opinion regarding standing, walking, manipulative, postural, and environmental limitations because he found the opinion was otherwise: (1) primarily based on subjective complaints; (2) internally inconsistent with Dr. Klebanoff's exam; and (3) overly restrictive. R. at 22-23. My review of the record confirms the ALJ's conclusions are supported by substantial evidence. See id. at 1026 (Dr. Klebanoff's almost entirely normal physical examination of Porretta, including normal right-sided grip strength).

Dr. Klebanoff opined Portetta could carry less than 10 pounds occasionally, sit for a total of eight hours in an eight-hour workday, and stand or walk for a total of four hours. Id. at 1030. In combination with his proposed manipulative and postural limitations, Dr. Klebanoff would

7

have restricted Porretta to a limited range of sedentary work. 20 C.F.R. § 404.1567(a). The major differences between the ALJ's and Dr. Klebanoff's recommended RFCs are whether Poretta could lift 10 or 20 pounds occasionally with her left arm, and stand/walk for a total of four or six hours per day. R. at 20, 1030-33.

The ALJ was required to weigh the examining physician's opinion using specific regulatory considerations. See 20 C.F.R. § 404.1527. By relying on the opinion's consistency and supportability to assign partial weight, he complied with this regulatory mandate. See Bailey v. Berryhill, No. 16-1759, 2018 WL 658868, at *4 (W.D. Pa. Feb. 1, 2018) (finding ALJ opinion that assigned partial weight to the opinion of an examining physician based on its inconsistency with the medical record and claimant's activities of daily living "provide[d] a reviewing court with the benefit of the factual basis underlying the ultimate disability finding" because the conclusion was borne out by the court's review of the medical record).

Finally, Porretta argues it was "legal error" for the ALJ to design an RFC without specific support in a medical source statement. Pl. Br. at 14 (citing Doak v. Heckler, 790 F.2d 26 (3d Cir. 1986). But "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); see also Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011) (An "ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision."). Because the ALJ supported his RFC and the weight he gave to each of the medical source statements with substantial evidence, the Commissioner met his burden of proof. Doak, 790 F.2d at 30 (awarding benefits only because medical evidence did not support RFC for light work and VE testimony regarding transferable

skills was misconstrued).

      An appropriate Order accompanies this opinion.